IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IRFAN MAZHER, et al., | § | |
| *Plaintiffs*, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:25-CV-017-P |
| | § | |
| MARCO RUBIO, *Secretary* | § | |
| *of State*, et al., | § | |
| *Defendants*. | § | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION REGARDING DEFENDANTS' MOTION TO DISMISS

Pending before the Court is a Motion to Dismiss [doc. 12], filed on March 31, 2025, by Defendants Marco Rubio, Secretary of State; Rena Bitter, in her official capacity, Assistant Secretary, Bureau of Consular Affairs; Natalie A. Baker, in her official capacity, Deputy Chief of Mission, United States Embassy, Islamabad, Pakistan; and John Doe, in his official capacity, Consular Officer at the United States Embassy in Islamabad, Pakistan (collectively "Defendants"). Having carefully considered the motion, response, reply, and the applicable law, the Court **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED**.

### I.    BACKGROUND

On January 18, 2025, Plaintiffs Sara Irfan ("Irfan") and Irfan Mazher[1] ("Mazher") (collectively "Plaintiffs") filed their Amended Complaint [doc. 7], which is the live pleading before this Court. In the Amended Complaint, Plaintiffs assert a claim of unreasonable delay in processing Irfan's immigrant visa application under the Administrative Procedures Act ("APA"). (Pls.' Am. Compl. at 7-8.) Irfan first became the beneficiary of an approved Form I-130, Petition

---

[1] Mazher is a United States citizen and the spouse of noncitizen Irfan. (Plaintiffs' Amended Complaint ("Pls.' Am. Compl.") [doc. 7] at 3.)

for Alien Relative, on August 20, 2020.[2] (Pls.' Am. Compl. at 5.) On December 24, 2020, Irfan submitted her immigrant visa application, and, on November 18, 2021, Irfan was informed that her case was documentarily complete. (*Id.*) Subsequently, on October 16, 2023, Irfan appeared for her scheduled initial immigrant visa application interview, and, at the end of the interview, she was ultimately informed that her case required additional screening and was placed in administrative processing. (*Id.*) On February 12, 2024, Plaintiffs were asked to submit additional documentation and were informed that Irfan's application remained refused under § 221(g) of the INA pending competition of administrative processing. (*Id.*) Irfan completed an additional scheduled interview on May 28, 2024, where she was asked to submit additional information. (*Id.* at 6.) Plaintiffs have not received any further requests for additional information or evidence since May 28, 2024. (*Id.*) Plaintiffs then filed this action, alleging that Irfan's immigrant visa application has been pending for an unreasonably long time because Defendants have not completed the adjudication of her application for over thirty-seven months—the time since her case became documentarily complete—and because it has been over fourteen months since her first immigrant visa applicant interview. (*Id.* at 6-8.)

As set forth above, Defendants filed a Motion to Dismiss [doc. 12] on March 31, 2025. In their Motion to Dismiss, Defendants argue that Plaintiffs' claim for unreasonable delay under the APA is subject to dismissal for four reasons: (1) this Court lacks jurisdiction over Plaintiffs' claim as the case is moot; (2) the doctrine of consular non-reviewability renders Plaintiffs' claim non-justiciable; (3) Plaintiffs have failed to state a claim under the APA for unreasonable delay; and (4) Plaintiffs have failed to state a viable due-process claim. (Defendants' Motion to Dismiss and Brief in Support ("Defs.' Brief") [doc. 12] at 1.)

---

[2] *See* Section I. E., infra, for a discussion of the relevant statutory and relevant framework of the Immigration and Nationality Act ("INA").

In response, Plaintiffs argue that their Amended Complaint adequately states a valid claim for relief under the APA. (Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss ("Pls.' Brief") [doc. 14] at 6.) In particular, Plaintiffs argue that Defendants' Motion to Dismiss under Federal Rules of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6) should be denied for the following reasons: (1) their claim is not moot as Irfan's immigrant visa application remains pending subject to the completion of administrative processing and, thus, has not been fully adjudicated; (2) the doctrine of consular non-reviewability does not bar judicial review here because no final adjudication has taken place; (3) Defendants have failed to perform their legally required, non-discretionary duty to adjudicate Irfan's visa application in a timely manner, which provides a valid basis for an APA claim; and (4) Plaintiff Mazher has a viable due process claim arising from the Defendants' unreasonable delay in completing the administrative processing of Irfan's visa application. (Pls.' Brief at 5-6, 23.) In their reply, Defendants renew their previous arguments. (Defendants' Reply to Support Defendants' Motion to Dismiss ("Defs.' Reply") [doc. 15] at 1.)

## II.    LEGAL STANDARDS

### A.    Rule 12(b)(1)

Federal Rule of Civil Procedure ("Rule") 12(b)(1) authorizes the dismissal of a complaint when the court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "A court may base its disposition of a motion to dismiss for lack of subject matter jurisdiction on (1) the complaint alone; (2) the complaint supplemented by the undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *See Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004) (quoting *Robinson v. TCI/US West Commc'ns. Inc.*, 117 F.3d 900, 904 (5th Cir. 1997)). The party asserting a court has jurisdiction, in this case Plaintiffs, bears the

burden of establishing subject-matter jurisdiction.  *See In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (citation omitted); *see also Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) ("The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction.") (citation omitted).  When multiple bases for dismissal are asserted, a court should consider a Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.  *See In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d at 286 (citing *Ramming*, 281 F. 3d at 161).  "A motion to dismiss for lack of subject-matter jurisdiction should only be granted if it appears certain that the plaintiff cannot prove any set of facts in support of his claims entitling him to relief."  *Id*. at 287 (citation omitted).

### B.    Rule 12(b)(6)

Rule 12(b)(6) authorizes the dismissal of a complaint that fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  This rule must be interpreted in conjunction with Rule 8(a), which sets forth the requirements for pleading a claim for relief in federal court.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  Rule 8(a) calls for "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (holding that Rule 8(a)'s simplified pleading standard applies to most civil actions).  A court, faced with a 12(b)(6) motion to dismiss, must accept as true all well-pleaded, non-conclusory allegations in the complaint and liberally construe the complaint in favor of the plaintiff.  *See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

The plaintiff must, however, plead specific facts, not mere conclusory allegations, to avoid dismissal.  *See Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  Indeed, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S.

at 570.  "Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted).  The court need not credit bare conclusory allegations or "a formulaic recitation of the elements of a cause of action." *Id.* Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Generally, a court ruling on a motion to dismiss may rely on only the complaint and its proper attachments.  A court is permitted, however, to rely on documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted).  In addition, the court may consider a "written document that is attached to a complaint as an exhibit" as well as "documents attached to a motion to dismiss that are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Texas Health and Hum. Servs. Comm'n v. United States*, 193 F. Supp. 3d 733, 738 (N.D. Tex. 2016) (internal quotation marks and citations omitted).

### C.    <u>APA</u>

The APA entitles a person to judicial review when he or she has been adversely affected by agency action or inaction. *See Jaraba v. Blinken*, 568 F. Supp. 3d 720, 728 (W.D. Tex. 2021) (citing 5 U.S.C. § 702).  In such a case, the APA "authorizes a reviewing court to 'compel agency action that has been unlawfully withheld or unreasonably delayed.'" *See id.* (quoting 5 U.S.C. § 706(1)).  While "the APA does not, by itself, confer federal court jurisdiction . . ., federal courts may exercise jurisdiction over APA claims pursuant to 28 U.S.C. § 1331." *Id.* (internal citations omitted); *see Oniwon v. U.S. Citizenship & Immigr. Servs.*, No. H-19-3519, 2020 WL 1940879, at

*2 (S.D. Tex. Apr. 6, 2020) (noting that while the APA "does not provide an independent basis for jurisdiction[,] an action to compel a federal agency action presents a federal question") (citation omitted), *report & recommendation adopted*, 2020 WL 1939686 (S.D. Tex. Apr. 22, 2020). However, courts lack jurisdiction under the APA to the extent a statute precludes judicial review or where the agency action is committed to agency discretion by law. *See* 5 U.S.C. § 701(a). Thus, for a claim under section 706(1) to proceed, a plaintiff must first assert that "an agency failed to take a *discrete* agency action that it is *required* to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis in original). Generally when analyzing a plaintiff's assertions, courts apply a strong presumption favoring judicial review of administrative action. *See Weyerhaeuser Co. v. Fish & Wildlife Serv.*, 586 U.S. 9, 23 (2018) (internal quotation marks and citation omitted). "The presumption may be rebutted only if the relevant statute precludes review, 5 U.S.C. § 701(a)(1), or if the action is 'committed to agency discretion by law,' § 701(a)(2)." *Id.*

### D.  Mandamus Act

In order to receive a writ of mandamus, a plaintiff must show (1) that he or she has a clear right to relief, (2) that the defendant has a clear duty to perform the act in question, and (3) that no other adequate remedy is available. *See Jaraba*, 568 F. Supp. 3d at 731, *see also Newsome v. EEOC*, 301 F.3d 227, 231 (5th Cir. 2002). Even if these conditions are met, it is in the court's discretion to permit mandamus relief. *See Jaraba*, 568 F. Supp. 3d at 731 (internal quotation marks and citation omitted). Generally, courts hold that a mandamus claim is not available when a plaintiff asserts a cause of action under the APA, as such claim would be duplicative. *See Sawan v. Chertoff*, 589 F. Supp. 2d 817, 826 (S.D. Tex. 2008) ("The APA provides a remedy for unlawfully delayed agency action; mandamus is not necessary for relief."). However, this makes little

practical difference where the APA claim is in the nature of mandamus relief.  *See Jaraba*, 568 F. Supp. 3d at 731.

### E.     Statutory and Regulatory Framework of the INA

Under the INA, consular officers can issue immigrant visas.  *See* 8 U.S.C. § 1201.  One of the most commonly utilized methods that immigrants use to enter the United States is the family-sponsored visa, which is a visa application that is sponsored by relatives, usually a spouse, who are citizens or lawful permanent residents.  *See* 8 U.S.C. §§ 1151, 1153(a)(1)-(4).

In order to receive a visa, the spouse of an alien or noncitizen must first file a Form I-130—Petition for Alien Relative—to have the alien classified as an immediate relative and priority visa status.  *See United States v. Asibor*, 109 F.3d 1023, 1035 n.13 (5th Cir. 1997).  Upon receipt, the United States Citizenship and Immigration Services ("USCIS") investigates whether an eligible relationship exists between the petitioner and the alien.  *See Naseri v. Rubio*, No. 24-CV-2125 (GMH), 2025 WL 1865035, at *2 (D.D.C. July 7, 2025).  Upon confirming the relationship, USCIS approves the petition and forwards it to the U.S. Department of State's National Visa Center ("NVC") for processing.  *Id*.  The NVC records approved petitions and notifies the petitioner and any approved family members of when to submit visa applications.  *Id*.

Upon being notified by NVC, the alien must then submit an immigrant visa application to the U.S. consulate in his or her respective country.  *See Asibor*, 109 F.3d at 1035 n.13; *see also* 22 C.F.R. § 42.63(a)(1) (as relevant here, "[e]very alien applying for an immigrant visa must make [an] application, as directed by the consular officer" and "[t]his requirement may not be waived.")  The noncitizen visa applicant bears the burden of establishing that he or she is eligible to receive a visa.  *See* 8 U.S.C. § 1361.  After the completion of the visa application, the Consulate schedules an interview with the noncitizen.  *See Asibor*, 109 F.3d at 1035 n.13; *see also* 22 C.F.R. § 42.62(a)

("Every alien applying for an immigrant visa . . . shall be required to appear personally before a consular officer for the execution of the application…").  At the interview, the consular officer determines the following: (1) the basis of the applicant's representations; (2) the basis of the visa application; (3) the proper immigrant classification of the visa applicant; and (4) the applicant's eligibility to receive a visa.  *See* 22 C.F.R. § 42.62(b).  Additionally, the consular officer has the authority to require the noncitizen to answer any question deemed material to the aforementioned determinations.  *See* 22 C.F.R. § 42.62(b).  After the interview, the consular officer must either issue the visa or refuse the visa under INA §§ 212(a) & 221(g), or other applicable law.  *See* 22 C.F.R. § 42.81(a).

Under INA § 221(g), a consular officer must refuse a visa if he or she determines from the statements in the application that (1) the alien is ineligible to receive a visa under INA § 1182; (2) the application does not comply with the INA or its regulations; or (3) the consular officer knows or has reason to know that the alien is ineligible to receive a visa under INA § 1182 or other applicable law.  *See* 8 U.S.C. § 1201(g).  If the consular officer refuses the visa, the officer must inform the applicant of the provision of law or implementing regulation that formed the basis of the refusal and any statutory provision or regulation under which administrative relief is available.  *See* 22 C.F.R. § 42.81(b).  If the grounds of ineligibility upon which the visa was refused cannot be overcome by the presentation of additional evidence, the principal consular officer at the consulate post shall review the case, record the decision, and sign and date the prescribed form.  *See* 22 C.F.R. § 42.81(c).  However, if the grounds of ineligibility can be overcome by additional evidence and the applicant intends to submit such evidence, a review of the refusal may be deferred.  *See* 22 C.F.R. § 42.81(c).  "If the visa is refused, and the applicant within one year from

the date of the refusal adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based, the case shall be reconsidered." 22 C.F.R. § 42.81(e).

## III.    DISCUSSION

In their Amended Complaint, Plaintiffs seek to compel the "complete" adjudication of Irfan's visa application. (Pls.' Am. Compl. at 8.) The APA requires a government agency to "within a reasonable time . . . conclude a matter presented to it." *See* 5 U.S.C. § 555(b). As stated above, courts may compel timely resolution when agency action has been unlawfully withheld or unreasonably delayed. *See* 5 U.S.C. § 706(1). To obtain such relief, Plaintiffs must first show that Defendants have failed to take a discrete agency action that Defendants are required to take. *See Norton*, 542 U.S. at 64. In their Amended Complaint, Plaintiffs allege that two statutes impose a non-discretionary duty on the Defendants to adjudicate Irfan's visa application within a reasonable time: 5 U.S.C. § 555(b) and 22 C.F.R. § 42.81. (Pls.' Am. Compl. at 7.) In response, as set forth above, Defendants assert the following arguments: (1) this Court lacks jurisdiction over Plaintiffs' claim as the case is moot; (2) the doctrine of consular non-reviewability renders Plaintiffs' claim non-justiciable; (3) Plaintiffs have failed to state a claim under the APA for unreasonable delay; and (4) Plaintiffs have failed to state a viable due-process claim. (Defs.' Brief at 1.)

### A.    **Mootness**[3]

"Under Article III, § 2 of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies. The case or controversy requirement subsists through all stages

---

[3] This Court notes the recent case *Martinez v. Baumann*, No. 5:24-CV-0894-JKP, 2025 WL 2109964 (W.D. Tex. July 28, 2025), which addresses facts substantially similar to the case at hand. While the Defendants in that case argued that the consular officer's refusal rendered the case moot, the Court concluded that the jurisdictional issue was standing and not mootness. *See Martinez*, 2025 WL 2109964, at *5 ("In this Court's view, actions taken before the filing of a civil action may affect whether the litigant has standing to bring the lawsuit, but such actions do not render a case moot.") Nevertheless, in *Martinez* the court proceeded with substantially the same analysis when analyzing standing, albeit shifted the burden to Plaintiff to establish standing. *See id*. ("Even though this Court disagrees with the invocation of mootness, the jurisdictional analysis is essentially the same whether viewed through the lens of mootness or standing so long as one keeps in mind that Plaintiff, rather than Defendants, has the burden to

of federal judicial proceedings and requires that the parties continue to have a personal stake in the outcome of the lawsuit." *Alwan v. Ashcroft*, 388 F.3d 507, 511 (5th Cir. 2004) (internal quotation marks and citations omitted). "'Mootness is a threshold jurisdictional inquiry.'" *See DeOtte v. State*, 20 F.4th 1055, 1064 (5th Cir. 2021) (quoting *La. Env't Action Network v. United States EPA*, 382 F.3d 575, 580 (5th Cir. 2004)). A case becomes moot when "intervening circumstances make it impossible for the court to 'grant any effectual relief.'" *Pool v. City of Hous.*, 987 F.3d 307, 313 (5th Cir. 2020) (quoting *Knox v. Serv. Employees Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012)). The Court shall address the jurisdictional issues, including mootness, prior to addressing the merits of this case. *See DeOtte*, 20 F.4th at 1064.

Here, Defendants argue that, by interviewing Irfan and subsequently refusing her application, they "have already provided Plaintiffs the relief they request . . . and because there is no relief the Court can grant, the [case] is moot." (Defs.' Brief at 5.) Specifically, Defendants assert that the consular officer's refusal of Irfan's visa application under § 221(g) of the INA at the conclusion of her interview constituted a final decision that satisfied their duties under both 5 U.S.C. § 555(b) and 22 C.F.R. § 42.81(a). (Defs.' Brief at 7.) In response, Plaintiffs allege that the consular officer's post-interview refusal under section 221(g) was not a final adjudication because "the consular officer has not yet determined whether 'to admit or exclude' Plaintiff Irfan" since he placed her application in administrative processing for additional screening. (Pls.' Brief at 8.) Thus, the question is whether Defendants fulfilled their non-discretionary duty, under 5 U.S.C. § 555(b), to adjudicate Irfan's visa application to its conclusion when the consular officer

---

standing."). Consequently, this Court will continue to analyze the jurisdictional issue as pleaded by the parties, namely through the lens of mootness.

refused the visa and placed the application into administrative processing.[4]  For the reasons set forth below, the Court finds Defendants fulfilled their non-discretionary duty.

First, the Court recognizes that there is an extensive split amongst courts regarding mootness and the finality of a refusal under § 221(g) of the INA when the refusal is subsequently followed by the placement of the refused visa application into administrative processing.  Some courts have held that a section 221(g) refusal does not moot a plaintiff's claim for unreasonable delay because such refusal is a nominal—not final—refusal.  *See, e.g. Patel v. Reno*, 134 F.3d 929, 932 (9th Cir. 1997) (holding that the consular officer's letter was neither a final decision nor a refusal under 22 C.F.R. § 42.81(b) because the visa applications were being held in abeyance); *Sharifi v. Blinken*, 731 F. Supp. 3d 433, 438 (E.D.N.Y. 2024) (finding that Plaintiff's complaint was not moot as the visa application had not been finally resolved since it remained in administrative processing and the consular officer's "nominal" refusal did not constitute a final agency action); *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 15-17 (D.D.C. 2022); *Ramizi v. Blinken*, 745 F. Supp. 3d 244, 256 (E.D.N.C. 2024).  Other courts, however, have concluded that a claim for unreasonable delay in the adjudication of a visa application is moot when a consular officer has issued a refusal under section 221(g), even if the application is subsequently placed in administrative processing.  *See, e.g., Conley v. U.S. Dep't of State*, 731 F. Supp. 3d 104, 111 (D. Mass. 2024) (holding that a consular officer's denial is "'final' unless and until it has been overturned"); *Toor v. Clinton*, No. 1:09-CV-F-279-OWW-GSA, 2009 WL 1582900, at *5-6 (E.D. Cal. June 4, 2009) (concluding that the consular officer's refusal satisfied

---

[4] This Court acknowledges a disagreement amongst courts regarding whether 5 U.S.C. § 555(b) imposes a non-discretionary duty to render a final adjudication in a visa application.  *See Sheikhalizadehjahed v. Gaudiosi*, No. 2:24-CV-1136 SCR, 2024 WL 4505648, at *7 (E.D. Cal. Oct. 16, 2024) (collecting cases); *see also Karimova v. Abate*, No. 23-5178, 2024 WL 3517852, at *3 (D.C. Cir. July 24, 2024).  However, since the parties here do not dispute the existence of a non-discretionary duty under section 555(b), the Court assumes that such duty exists here.

the duty owed to plaintiff); *Hussein v. Beecroft*, 782 F. App'x 437, 442 (6th Cir. 2019) ("Because plaintiffs' claims became moot the moment the consular officer denied Abdulrab's visa petitions for failure to prove a marital relationship with Hussein, the district court did not clearly err in determining that defendants had completed the actions originally sought in plaintiffs' petition for mandamus."); *Chang v. U.S. Dep't of State*, No. C23-01918-RSM, 2024 WL 3161895, at *2 (W.D. Wash. June 25, 2024); *Yaghoubnezhad v. Stufft*, 734 F. Supp. 3d 87, 104 (D.D.C. 2024).

In Texas, most courts have found that a section 221(g) refusal constitutes a final decision, even if it is followed by administrative processing. *See e.g. Roshan v. U.S. Dep't of State*, No. 1-23-CV-1297-RP, 2024 WL 3843786, at *2 (W.D. Tex. July 22, 2024) (holding Plaintiff's complaint was moot because Plaintiff was given the relief sought—adjudication of their visa—when the consular officer refused the visa application under INA § 221(g)); *Tariq v. Blinken*, No. 3:21-cv-02841-M, 2023 WL 2661543, at *1 (N.D. Tex. Jan. 31, 2023) (same); *Guilarducci v. Blinken*, No. 3:21-CV-1719-K, 2021 WL 5140874, at *12 (N.D. Tex. Nov. 4, 2021) (same); *see also Khosravi v. U.S. Dep't of State*, No. 24-4221, 2025 WL 987201, at *2 (S.D. Tex. Apr. 2, 2025) (noting that "no district court within the Fifth Circuit similarly holds that a consular officer's refusal is not final, even when it is subject to further administrative review") (collecting cases); *but see Ali v. Rice*, No. H-07-1868, 2008 WL 11502058, at * 6 (S.D. Tex. July 31, 2008) (designating a section 221(g) refusal as occurring prior to a final adjudication of a visa claim). Thus, this Court similarly concludes that the consular officer's refusal of Irfan's visa application after her interview constituted a final adjudication under § 555(b) of the APA, "unless and until [the refusal] is superseded by another decision." *Yaghoubnezhad*, 734 F. Supp. 3d at 103.

Furthermore, as stated above, a case is only moot when "it is impossible for a court to grant any effectual relief to the prevailing party." *Knox*, 567 U.S. at 307 (internal quotation marks and

citation omitted). In this case, as the relief that Plaintiffs are requesting is a final adjudication of Irfan's visa application—something that has already occurred—the Court concludes that Plaintiffs claim for unreasonable delay is moot. Additionally, even if the Court could provide the requested relief by issuing an order compelling Defendants to conclude administrative processing and render a final decision, the claim would still be barred under the doctrine of consular non-reviewability, as discussed below.

### B.    Doctrine of Consular Non-Reviewability

It has been recognized "that the admission and exclusion of [noncitizens] is a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." *See Dep't of State v. Muñoz*, 602 U.S. 899, 907 (2024) (internal quotation marks and citations omitted). "Congress may delegate to executive officials the discretionary authority to admit noncitizens 'immune from judicial inquiry or interference.'" *Id.* at 907-08 (quoting *Harisiades v. Shaughnessy*, 342 U.S. 580, 588-91 (1952)). When it does so, "the action of an executive officer to admit or to exclude an alien 'is final and conclusive.'" *Id*. at 908 (quoting *United States ex. Rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950)). Thus, under the doctrine of consular non-reviewability, federal courts cannot review the denial by consular officers of visa applications. *Id*.

Here, Plaintiffs argue that the doctrine of consular non-reviewability does not bar their claim because they did not bring "the instant action to compel a particular outcome," instead they seek to "compel agency action that has been withheld for an unreasonably long period of time." (Pls.' Brief at 14.) However, as previously articulated, the consular officer's refusal of Irfan's visa application pursuant to § 221(g) of the INA was a final adjudication, despite the subsequent administrative processing. By seeking to compel further action beyond the refusal, Plaintiffs are

effectively challenging the denial of Irfan's immigrant visa application.[5]  *See Jolghazi v. Blinken*, No. 5:23-CV-01071-OLG, 2024 WL 4182593, at *2-3 (W.D. Tex. July 30, 2024); *see also Salem v. Mukasey*, 683 F. Supp. 2d 289, 290 (W.D.N.Y. 2010) (holding that visa applications are barred by doctrine as they are final adjudications subject to "the officer's own discretion to reopen the matter.")  Consequently, it would appear that Plaintiffs' claim under the APA would be barred by the doctrine of consular non-reviewability.

However, the doctrine is subject to two narrow exceptions: (1) where a statute expressly authorizes judicial review of a consular officers' actions or (2) when an American citizen is challenging the exclusion of a noncitizen alleging it burdens the citizen's constitutional right.  *See Castro v. Blinken*, H-21-2494, 2022 WL 180987, at *3 (S.D. Tex. Jan. 20, 2022) (citation omitted).  As the parties seeking to overcome the doctrine and invoke this Court's jurisdiction, Plaintiffs bear the burden of proving an exception exists.  *See Ramming*, 281 F.3d at 161.  The Court will analyze each exception below.

### 1.    Unreasonable Delay Exception

As stated above, the APA expressly provides individuals the opportunity to seek judicial remedies if they are adversely affected by "agency action."  *See* 5 U.S.C. § 702.  The APA confers jurisdiction on reviewing courts to compel agency action when, as relevant here, the action has

---

[5] This Court notes that courts in other circuits have held that the doctrine of consular non-reviewability does not bar a claim for unreasonable delay.  *See, e.g., Ramizi*, 745 F. Supp. 3d at 256 (holding that the doctrine of consular non-reviewability did not moot Plaintiffs' claim because they were not challenging the officer's refusal, rather Plaintiffs were challenging the period of post-refusal administrative processing that ensued after the refusal); *see also Didban v. Pompeo*, 435 F. Supp. 3d 168, 174 (D.D.C. 2020) (holding that "[b]ecause Plaintiffs do not seek review of a consular officer's decision, the doctrine of consular non-reviewability does not apply" and the court could review Defendants failure to decide the noncitizen plaintiff's waiver application); *Sharifi*, 731 F. Supp. 3d at 438. Some courts in Texas have similarly refused to apply the doctrine of consular non-reviewability to bar an unreasonable delay claim. *See, e.g., Ali*, 2008 WL 11502058, at *6; *Jaraba*, 568 F. Supp. 3d at 731.  Nonetheless, a majority of courts in Texas have applied the doctrine to bar claims similar to Plaintiffs' here.  *See, e.g., Roshan*, 2024 WL 3843786, at *2; *Bamdad v. U.S. Dep't of State*, No. 1:23-CV-757-DAE, 2024 WL 1462948, at *3 (W.D. Tex. Feb. 9, 2024); *Burris v. Kerry*, No. 4:12-CV-728, 2014 WL 1267272, at *4 (E.D. Tex. Mar. 27, 2014); *Jaime v. Blinken*, No. EP-22-CV-248-KC, 2023 WL 2657651, at *2 (W.D. Tex. Mar. 24, 2023).

been "unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1); *see also* 5 U.S.C. § 555(b) (the APA mandates that an "agency shall proceed to conclude a matter presented to it" "within a reasonable time"). However, "'a claim under § 706(1) can proceed only where a plaintiff asserts that an agency [1] failed to take a *discrete* agency action that [2] it is *required to take*.'" *Li v. Jaddou*, No. 22-50756, 2023 WL 3431237, at *1 (5th Cir. Mar. 12, 2023) (per curiam) (unpublished) (quoting *Norton*, 542 U.S. at 64). Thus, to make an appropriate showing of the requested relief and overcome the doctrine of consular non-reviewability, Plaintiffs must allege that (1) Defendants either failed to perform or unreasonably delayed in performing an agency action and (2) Defendants are required to perform that discrete agency action under a relevant statute. *See id.*; *see also* 5 U.S.C. § 706(1). Even assuming that Plaintiffs can allege a discrete agency action that Defendants are required to perform,[6] Plaintiffs, as discussed below, have failed to state a plausible basis to conclude that any delay amounts to an unreasonable delay.

To determine whether an action has been unreasonably delayed, courts often utilize the following six factors articulated in *Telecommunications Research and Action Center* ("*TRAC*") *v. F.C.C.*, 750 F.2d 70, 80 (D.C. Cir. 1984). Utilizing the TRAC factors, a court asks the following:

(i)        Whether the agency's timing is governed by a "rule of reason";

(ii)       Whether Congress has provided a timetable;

(iii)      Whether the consequence of delay is economic, in which case delay is more tolerable than "when human health and welfare are at stake";

---

[6] Defendants argue that Plaintiffs have not alleged a discrete agency action that Defendants were required to perform as "the consular officer took the precise action directed by" regulation when he denied Irfan's visa application after her interview and "Defendants lack any mandatory, non-discretionary duty to re-adjudicate." (Defs.' Brief at 14.) Plaintiffs, in response, allege that Defendants have not performed their non-discretionary duty to conclude the application process because the counsel officer's refusal was not a final adjudication. (Pls.' Brief at 8.) As previously articulated, a majority of courts in Texas courts have held, as this Court now holds, that the consular officer's refusal was a final adjudication. *See Khosravi*, 2025 WL 987201, at *2 (collecting cases). Nevertheless, this Court assumes, for the sake of argument, that Plaintiffs have properly alleged Defendants have a non-discretionary duty that they have not performed.

(iv)        Whether expediting delayed action will affect other agency priorities;

 (v)         What interests will be prejudiced by delay; and

(vi)        Whether impropriety is behind the delay (though impropriety isn't required to find unreasonable delay).

*See Ahmed v. Bitter*, 727 F. Supp. 3d 630, 637-38 (S.D. Tex. 2024) (quoting *TRAC*, 750 F.2d at 79-80). Although the Fifth Circuit has not adopted these factors, *see Li*, 2023 WL 3431237, at *1 n.2 (noting "[t]he Fifth Circuit has never adopted [the TRAC] multi-factor test"), courts in this circuit "have found the structure helpful to address unreasonable delay claims under APA § 706(1)." *See Kizilyildirim v. Daum*, No. 4:23-cv-03287, 2024 WL 1722277, at *6 (S.D. Tex. Mar. 29, 2024) (internal quotation marks and citation omitted), *report & recommendation adopted*, 2024 WL 1719924 (S.D. Tex. Apr. 22, 2024); *see also Ahmed*, 727 F. Supp. 3d at 637-38; *Kolluri v. U.S. Citizenship & Immigr. Servs.*, No. 3:20-CV-02897-N, 2021 WL 183316, at *4 (N.D. Tex. Jan. 17, 2021) (applying the TRAC factors and noting that "what constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case") (internal quotation marks and citation omitted); *Jaraba*, 568 F. Supp. 3d at 733. Thus, this Court shall utilize the *TRAC* factors in analyzing whether the Plaintiffs have established a claim for unreasonable delay.[7]

     a.    First *TRAC* Factor

The first factor looks at whether the time that an agency takes in adjudicating applications is governed by a "rule of reason." *TRAC*, 750 F.2d at 80. Defendants argue that this factor weighs

---

[7] Some courts refuse to utilize the *TRAC* factors at the motion to dismiss stage because of the fact-specific analysis that takes place in analyzing a claim for unreasonable delay. *See Al-Gharawy*, 617 F. Supp. 3d at 17-18; *Raouf v. U.S. Dep't of State*, 702 F. Supp. 3d 19, 32 (D.N.H. 2023). However, because Plaintiffs must state a claim for unreasonable delay that is plausible on its face and meet their burden of proving an exception to the doctrine of consular non-reviewability, this Court applies the *TRAC* factors to determine whether the complaint has adequately alleged such a claim. *See Ghannad-Rezaie v. Laitinen*, 757 F. Supp. 3d 148, 154-55 (D. Mass. 2024); *Dennis v. Blinken*, No. 1:22-CV-02522-JRR, 2023 WL 4764576, at *6 (D. Md. July 26, 2023).

in their favor, as case law supports the period of delay in this case and "the government's interests in balancing its own priorities and carefully vetting [noncitizens] before admitting them to the county outweigh Plaintiffs' interest in receiving an immediate re-adjudication of the visa application at issue."  (Defs.' Brief at 15; Defs.' Reply at 9.)  In response, Plaintiffs argue that Defendants have not stated a rule of reason for the delay and, thus, the first factor favors Plaintiffs. (Pls.' Brief at 19.)

After reviewing the parties' arguments, the Court finds that the first *TRAC* factor weighs in favor of the Defendants, as they have identified a rule of reason that governs the timing of processing immigrant visa cases—namely carefully vetting foreign nationals before admitting them to the country.  *See Ahmed*, 727 F. Supp. 3d at 638 (finding that the first factor favored the Government as it had identified a rule of reason—the Government "systematically processes applications according to its foreign policy priorities and the timing of when the case documents are complete for each application").

### b.    Second *TRAC* Factor

As to the second factor, the Court looks at whether Congress has provided a timetable to control when the agency may be expected to take action.  *TRAC*, 750 F.2d at 80.  Here, the parties agree that Congress has not provided a specific timetable by which Defendants are required to adjudicate a visa application.  (Defs.' Brief at 15; Pls.' Brief at 19.)  Instead, such timing is within the discretion of the agency.  *See Ahmed*, 727 F. Supp. 3d at 638.  Furthermore, Defendants argue that courts have "routinely concluded that delays in processing immigrant applications that are far longer than the purported delay here—approximately 17 months—do not constitute unreasonable delay."[8]  (Defs.' Brief at 16.)  In response, Plaintiffs assert that Defendants "seem to ignore the

---

[8] At the time of Defendants' Motion to Dismiss was filed, the Plaintiffs had been allegedly waiting seventeen months since Irfan's first immigrant visa interview.  (Defs.' Brief at 16.)  Currently, the Plaintiffs have been waiting

fact that the question of reasonableness in such cases [as this] is a fact specific inquiry and clearly requires a case-by-case analysis versus a 'blanket rule'" as to when a delay is unreasonable.  (Pls.' Brief at 19.)

In the context of immigration applications, courts have recognized that it "'takes time—and often a lot of it.' . . . [and that] delays of 'years—or even decades' [are] an unfortunate, but lawful reality of the immigrant visa process."  *Id.* (quoting *Scialabba v. Cuellar de Osorio*, 573 U.S. 41, 50 (2014)).  Courts also often look to surrounding case law in determining the reasonableness of a period of delay in the absence of a Congressional mandate.  *See Ahmed*, 727 F. Supp. 3d at 638 (holding less than three-year delay to be reasonable when looking at surrounding case law) (collecting cases); *see also de Belinay v. Mayorkas*, No. 1:24-cv-00240 (CRC), 2025 WL 671120, at *6 (D.D.C. Mar. 3, 2025) (finding a delay of sixteen months to be reasonable in light of surrounding case law) (collecting cases); *see also Yan v. Mueller*, No. H-07-0313, 2007 WL 1521732, at *9 (S.D. Tex. May 24, 2007) (holding that delay of over three years was not unreasonable); *Debba v. Heinauer*, 366 F. App'x 696, 699 (8th Cir. 2010) (finding that delay of ten years was not unreasonable).  Here, it appears that the delay of approximately twenty-one months is not unreasonable.  Therefore, the Court finds that the second *TRAC* factor weighs in favor of Defendants.

### c.    Third *TRAC* Factor

The third factor looks to "whether the consequence of delay is economic, in which case delay is more tolerable than 'when human health and welfare are at stake.'"  *Ahmed*, 727 F. Supp. 3d at 637-38 (quoting *TRAC*, 750 F.2d at 80).  As to this factor, Plaintiffs allege that they have endured the following hardships from Defendants delay: (1) "significant financial and emotional

---

for approximately twenty-one months.  While the Court notes this additional delay, it, at this time, has no effect on the Court's analysis or conclusion.

hardships as a result of the unreasonable period of time that Plaintiff IRFAN's case has been pending without final adjudication"; (2) Irfan has "been forced to live apart from her U.S. citizen spouse without his mental, physical, and emotional support for an unreasonably long period of time"; (3) Mazher has been separated from his two minor children during their formative years; and (4) Mazher is experiencing worsening medical issues, as he cannot receive a necessary surgery while his wife is absent.  (Pls.' Am. Compl. at 7; *see* Pls.' Brief at 21.)  In their Motion to Dismiss, Defendants argue that the hardships Plaintiffs complain of are insufficient to tip the third factor in their favor because Plaintiffs' circumstances are not unique.  (Defs.' Brief at 17.)

Courts have routinely held that the third *TRAC* factor does not weigh in favor of plaintiffs if the claimed hardships are not unique and suffered by similarly situated applicants.  *See e.g. Ahmed*, 727 F. Supp. 3d at 639 (finding that Plaintiff failed to make a showing "of anything particular to their unique situation, or that any hardships they face due to delay are different from those similarly situated applicants") (collecting cases); *Da Costa v. Immigr. Inv. Program Office*, 80 F.4th 330, 345 (D.C. Cir. 2023) (finding the third *TRAC* factor weighed against Plaintiffs because their allegations of health and welfare harm were generalized and not linked to individual circumstances); *Mohammad v. Blinken*, 548 F. Supp. 3d 159, 168-69 (D.D.C. 2021) (holding third factor weighs in favor of the Government because the hardships alleged mirrored the circumstances of similarly situated applicants or were based on the repercussions of Plaintiff's own choices); *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 95-96 (D.D.C. 2020).  Here, Plaintiffs' claims of significant financial and emotional hardships from the delay are not unique.  For instance, Plaintiffs allegation of hardship arising from Irfan's separation from Mazher's mental, physical, and emotional support is like that of many similarly situated applicants who are seeking a visa to reside with their spouse.  Additionally, Plaintiffs' allegation that Mazher has been burdened due

to his separation from his two minor children during their formative years, without more, fails to show how Mazher's situation is unlike that of the many applicants who are separated from their family members during this waiting period.  *See Ahmed*, 727 F. Supp. 3d at 639.  Consequently, Plaintiffs' general allegations of financial, emotional, and separation hardships do not tip this factor in Plaintiffs' favor.  However, Plaintiffs do allege a specific hardship arising from medical treatment delays, which the Court shall discuss separately.

Plaintiffs allege that Mazher is suffering medical hardship because of the delay in processing Irfan's application.  (Pls.' Brief at 21.)  Specifically, Plaintiffs allege that Mazher suffers from diabetes, high blood pressure, Hepatitis B, liver steatosis, and that he is "now in desperate need of surgery for an injury sustained during an accident."  (*Id.*)  As to the surgery, Plaintiffs argue that Mazher requires his wife's "physical presence before undertaking such a surgery and most certainly would benefit from her emotional and mental support post-surgery during his recovery period."  (*Id.*)  While this Court is sympathetic to Mazher's medical conditions and its effect on his family, his hardship stemming from his lack of support is exacerbated by his own actions, namely his recent relocation from El Paso to Dallas, where he does not have family or close support.  (Pls.' Brief, Medical Letter [doc. 14-1] at 2.)  Consequently, the Court finds that the third *TRAC* factor weighs in favor of Defendants.  *See Ahmed*, 727 F. Supp. 3d at 639; *see also Mohammed*, 548 F. Supp. 3d at 168-69 (finding the third factor weighs in favor of the Government because Plaintiff cannot blame the Government for difficulties arising from the repercussions of their own choices).

        d.   Fourth *TRAC* Factor

Under the fourth *TRAC* factor, the Court considers the effect of expediting delayed action on agency activities of higher or competing priority.  *TRAC*, 750 F.2d at 80.  Defendants advance

the following reasons for why this factor weighs in their favor: (1) the effect of compelling adjudication of Irfan's application impacts other applicants; (2) an order compelling prioritization of Irfan's application would result in additional similar lawsuits, producing no net gain in the administrative system and an increased burden on the judicial system; and (3) expediting action would compromise the significance of a consular officer's decision and its effect on national security.[9]  (Defs.' Brief at 18-19.)  As recognized by several other courts, compulsion of the adjudication of Irfan's application results in no net gain to the administrative system and, ultimately, causes delays for other similarly situated applicants.  *See Ahmed*, 727 F. Supp. 3d at 639 (noting that "'immigrant visa processing is a zero-sum game with [the agency's] limited resources.  Processing one category of immigrant visas necessarily results in diminished resources for processing another category of visas'") (quoting *Gjoci v. Dep't of State*, No. 1:21-cv-00294-RCL, 2021 WL 3912143, at *13 (D.D.C. Sept. 1, 2021)).  Further, the Court acknowledges and agrees with Defendants' argument that granting Plaintiffs' requested relief would also negatively impact Defendants' priority of preserving national security by mandating a re-adjudication of the consular officer's decision.  Consequently, the Court finds the fourth *TRAC* factor weighs in favor of the Defendants.

---

[9] Plaintiffs allege the following three bases for why the fourth *TRAC* factor weighs in their favor: "Defendants assume without any factual basis that [ ] Irfan's immigrant visa application is not already at the 'front of the line'"; (2) if there is a queue in the government's system, Irfan "should certainly be at the front of such a queue" as she has been interviewed twice and complied with the consul[er] officer's requests; and (3) if there are applications which precede Irfan's in the line due to delay, "this may suggest that the Defendants' delay is the result of agency insufficiency, and a mismanagement of resources allocated to them." (Pls.' Brief at 20-21.) However, such allegations are conclusory and are not based on any facts beyond the standard processing requirements of interviewing and complying with requests, which tends to show that Irfan's application would be at the front of the line. Thus, Plaintiffs' conclusory allegations are not sufficient to tip the fourth *TRAC* factor in their favor. *See Twombly,* 550 U.S. at 570 (finding a court need not credit bare conclusory allegations or "a formulaic recitation of the elements of a cause of action").

e.    Fifth *TRAC* Factor

The fifth factor asks the Court to look at the nature and extent of the interests prejudiced by the delay.  *TRAC*, 750 F.2d at 80.  Here, Irfan is likely prejudiced by any delay in her application.  *See Ahmed*, 727 F. Supp. 3d at 640.  Nonetheless, any prejudice resulting from the delay does not overcome the other *TRAC* factors, which weigh strongly in Defendants' favor, or the prejudice posed by applicant lawsuits to the Defendants' interests.  *Id*.  Furthermore, the Court acknowledges the interests of other applicants ahead of Irfan in line, which would be prejudiced by this Court compelling Defendants to conclude adjudication of Irfan's application.  *Id*.  Therefore, the Court finds that the fifth *TRAC* factor weighs in Defendants' favor.

f.    Sixth *TRAC* Factor

Finally, under the sixth *TRAC* factor, the Court looks at whether there is any impropriety behind the delay, but "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed."  *TRAC*, 750 F.2d at 80 (internal quotation marks and citation omitted); *Ahmed*, 727 F. Supp. 3d at 638, 640.  Here, Defendants argue that the sixth factor is either irrelevant or weighs in their favor as Plaintiffs do not allege that Defendants have acted in bad faith.  (Defs.' Brief at 20.)  In response, Plaintiffs assert that the Court need not find any impropriety.[10]  (Pls.' Brief at 22.)  When neither party has alleged impropriety, courts often hold that the sixth factor does not weigh in favor of either party.  *See Jaraba*, 568 F. Supp. 3d at 739; *see also Brzezinski v. U.S. Dep't of Homeland Sec.*, No. 21-376

---

[10] Plaintiffs also argue that impropriety may be discovered through the course of litigation.  (Pls.' Brief at 22.)  Mere conclusory allegations of any potential, discoverable impropriety, however, are not sufficient to tip the sixth factor in Plaintiffs' favor.  *See Twombly,* 550 U.S. at 570.  Furthermore, the APA provides that judicial review is based on "the whole record or those parts of it cited by a party."  5 U.S.C. § 706; *see Ahmed*, 727 F. Supp. 3d at 640.  Further, courts have noted that "caselaw also suggests a strong presumption against supplementing the administrative record or conducting extra-record discovery in APA cases."  *See Ahmed*, 727 F. Supp. 3d at 640 (citing *La Union Del Pueblo Entero v. FEMA*, 141 F. Supp. 3d 681, 694-95 (S.D. Tex. 2015) and *State of La., ex rel. Guste v. Verity*, 853 F.2d 322, 327 n.8 (5th Cir. 1988)).  Thus, the Court finds Plaintiffs' argument for the sixth *TRAC* factor to be unpersuasive.

(RC), 2021 WL 4191958, at *6 (D.D.C. Sept. 15, 2021) (noting that when a plaintiff fails to allege bad faith or impropriety, "courts have either chosen not to apply the sixth *TRAC* factor at all, . . . or [have] acknowledged that this does not count again the plaintiff's case") (internal citations omitted). Consequently, as Plaintiffs fail to sufficiently allege bad faith or impropriety, the Court finds the sixth *TRAC* factor to be neutral.

In sum, under the *TRAC* factors, Plaintiffs have not shown that their application has been unreasonably delayed. While the Court is sympathetic to the time Plaintiffs have spent waiting, the immigration process often takes a considerable amount of time. *See Scialabba*, 573 U.S. at 50. Considering the relevant circumstances, the delay of approximately twenty-one months is not unreasonable. Thus, the Court finds that Plaintiffs have not stated a viable claim for unreasonable delay under the APA and that Plaintiffs have failed to sufficiently allege the unreasonable delay exception under the doctrine of consular non-reviewability. *See Castro*, 2022 WL 180987, at *3.

## 2. Constitutional Right Exception

The second exception to the doctrine of consular non-reviewability, as stated above, applies to challenges by American citizens on the basis that the exclusion of a noncitizen is burdening a citizen's constitutional right. *Id.* (quoting *Baan Rao Thai Rest.*, 985 F.3d at 1045-25). In their Amended Complaint, Plaintiffs allege, *inter alia*, that Defendants' delay in processing Irfan's application has violated Mazher's "due process rights pertaining to his familial choices." (Pls.' Am. Compl. at 8.) In their Motion to Dismiss, Defendants argue that Plaintiffs have failed to state a claim. (Defs.' Brief at 20.) Specifically, Defendants point this court to *Muñoz*, where the Supreme Court "held that 'a citizen does not have a fundamental liberty interest in her noncitizen spouse being admitted to the country.'" (*Id.* (quoting *Muñoz*, 144 S. Ct. at 1821).) Furthermore, Defendants allege that "even prior to *Muñoz*, every circuit that that decided whether a marriage

creates a constitutionally protected liberty interest in a spouse's immigration matters, except the Ninth Circuit, held that no constitutional rights are implicated when the government denies a visa to a non-citizen spouse." (*Id.*) In response, Plaintiffs claim, *inter alia*, that while *Muñoz* "deprives U.S. citizens of a constitutional right to have their non-citizen spouse admitted to the United States, it should not be interpreted as giving blanket immunity to government agencies that have indefinitely delayed visa adjudications without any legitimate explanation or excuse." (Pls.' Brief at 22.) Plaintiffs also allege that Mahzer has a viable due process claim due to the unreasonable delay in adjudicating Irfan's application. (*Id.* at 23.) While Plaintiffs fail to identify whether they are alleging a substantive or procedural due process claim, the Court shall briefly discuss both below.

For Plaintiffs to succeed on a substantive due process claim, they "must establish the existence of a legally protected liberty or property interest[] and a depravation of that interest." *Hinojosa v. Cohan*, No. 1:23-cv-136, 2024 WL 3751275, at *7 (S.D. Tex. Aug. 9, 2024) (citing *Conroe Creosoting Co. v. Montgomery Cnty.*, 249 F.3d 337, 341 (5th Cir. 2001) and *Coggin v. Longview Indep. Sch. Dist.*, 337 F.3d 459, 473 (5th Cir. 2003)). However, there is no protected liberty interest or constitutional right to have a noncitizen spouse remain in the United States. *See Bright v. Parra*, 919 F.2d 31, 33 (5th Cir. 1990) (citing *Anetekhai v. Immigration and Nationalization Serv.*, 876 F.2d 1218, 1222 n.5 (5th Cir. 1989)); *see also Hinojosa*, 2024 WL, at *7; s*ee also Muñoz*, 602 U.S. at 909. Thus, Mazher has failed to sufficiently allege a substantive due process claim.

The Court interprets Plaintiffs' allegation that Mazher "may have a due process claim as to the unreasonable delay in completing the administrative processing of Plaintiff Irfan's immigrant visa application and ultimately the failure to issue a final determination" to be alleging

a procedural due process claim.  (Pls.' Brief at 23.)  For a procedural due process claim, Plaintiffs must establish that Mazher (1) has a protected liberty interest and (2) that he was not afforded appropriate process by Defendants.  *See Hinojosa*, 2024 WL 3751275, at *7 (citation omitted) (holding Plaintiff's procedural due process claim fails "because she is unable to show either a protected interest or a lack of process to adjudicate her husband's visa application").  First, as explained above, Mazher does not have a protected interest.  *See Muñoz*, 602 U.S. at 909. Secondly, even if Mazher did have a protected interest, Plaintiffs have failed to allege that they received inadequate government process.  In this case, Plaintiffs received adequate process when they were given notice that Irfan's application was denied under § 221(g) of the INA.  In addition, Irfan's interviews at the consulate constituted a sufficient opportunity for a hearing, which also satisfies adequate process.  *See Khaleel v. U.S. Dep't of State*, No. H-24-2970, 2025 WL 777082, at *4 (S.D. Tex. Mar. 11, 2025) (finding no procedural due process claim where "the interview at the embassy constituted adequate notice and opportunity for a hearing") (citation omitted).  Thus, the Court finds that Plaintiffs have failed to sufficiently allege a procedural due process claim and that the second exception to the doctrine of consular non-reviewability does not apply.

As Plaintiffs have failed to establish that an exception to the doctrine of consular non-reviewability applies, the Court finds that it lacks the statutory and constitutional authority to adjudicate Plaintiffs' claims.  *See Home Builder Assoc. of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal quotation marks and citation omitted).  Consequently, the Court finds that Defendants' motion should be granted.

## IV.   CONCLUSION

For the reasons set forth above, the Court **RECOMMENDS** that Defendants' Motion to Dismiss [doc. 12] be **GRANTED**.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document.  The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made.  *See* 28 U.S.C. § 636(b)(1).  Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge.  *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending time to file objections from ten to fourteen days).

## **ORDER**

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **August 25, 2025** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation.  It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED August 11, 2025.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE